Superior Off Shore International v. Bristow Group May it please the Court, my name is William Hosey, I'm with Coneswift & Graf, I represent the Plaintiff Appellant Superior Off Shore International Inc. and I would like to reserve four minutes for rebuttal. That's granted. Your Honors, in this case there was a collision at the intersection of Rule 12b6 and Rule 56 and Superior Off Shore International's antitrust claim got totaled, but its claim should not have been in that intersection on that day or at that time because the plaintiff had pled a plausible antitrust conspiracy claim. The door should have been opened for full discovery, which before a summary judgment was considered by the District Court. But you had a year to commence discovery and didn't do that, did you? Your Honor, we did not, but that isn't how these cases work. The defendants immediately filed a motion to dismiss and as turned out to be the case later on, even after the District Court had allowed us to amend the complaint and we sought additional discovery, that was denied. We had been limited to discovery related to one telephone call and we sought documents and other discovery and the defendants opposed it and the District Court denied our request. Of course, the issue really is a pleading standard too. It's a question of how much you have before you plead rather than your discovery, is it not? Well, in this case, the District Court allowed us to amend the complaint and in doing so he had to use the exact same standard in order to determine whether it was futile that he would have had to use initially. So we were under the Twombly standard from the beginning of the case and also when we moved to amend the complaint. So once we had overcome that hurdle, we believe that because of the plausibility of the garden variety price fixing conspiracy alleged in the complaint that we should have been allowed full discovery here. We think that the facts show an extremely plausible conspiracy and the addition of Mr. Tuttle's testimony, we think just pushed us farther down the road to being able to prove it at trial. Isn't our standard of review rather limited on your discovery issue? Well, Your Honor, generally it is, although this court has said when the evidence is in the hands of the movement that Rule 56D motions are granted almost as a matter of course. So under this court's jurisprudence, I believe that there is less discretion in a situation like this where many courts have pointed out that in conspiracy cases, the evidence is almost always in the hands of the conspirators. It wasn't something we could get publicly. So in this case, I think the district court's discretion was more limited than usual. But we still have to determine that the court abused the discretion that they had. That's correct, Your Honor. The district court pointed out that you did put in your affidavit, I guess, nine discovery, general discovery requests. They pointed out, and they are incredibly broad, aren't they overbroad? Well, I don't believe so, Your Honor. They don't have any time, geographic, there's no limitations on them. Well, the complaint is from 2001 to 2005. That's the proposed class period in the case. And we certainly, I believe, were seeking discovery during that time period. So there was a temporal limitation. But in these types of cases, because we didn't have any information other than, information about direct evidence of a conspiracy other than Mr. Tuttle's testimony about what Mr. Graves said, we had to be somewhat general. However, the types of things that we would get are, for example, internal documents discussing the price increases. These were unprecedented price increases during the first half of 2001. It had flat pricing for over a decade, according to the largest operator. If we don't find that there was direct evidence of concerted action, can you point to, to the extent you have them, plus factors you think exist here? Well, the plus factors here, I think you look at the market, structure of the market, and the other economic evidence that we had pled initially and also in the amended complaint, which are a highly concentrated market, opportunities to collude, in place inelasticity, that the products were substituted, or the services here were substitutable, and that after a decade, according to the largest operator, they had an unprecedented price increase of 30%. But doesn't the oligopolistic character of the market and the, therefore the interdependence really hurt you in terms of what the, what we might normally think of as competitive behavior, where there are few entrants, there are few, you know, participants in the market. I mean, under, under economic or antitrust theory, it's not the kind of market where you would necessarily infer an agreement by virtue of parallel behavior. In fact, parallel behavior would be a normal reaction where there was an agreement lacking. Isn't that correct? As a... I mean, I'm talking about flat glass and what Judge Chertoff said, you really need an interdependent setting, which this is. Your Honor, I agree that interdependence is certainly something that the district court hung its hat on, that he didn't believe when he, as we say, looked at each, each part of our proof or our allegations in the complaint, he concluded, although we believe albeit incorrectly, after compartmentalizing our proof, that this was only interdependence, that we hadn't shown anything else. But here I think that, for example, the Seventh Circuit in the text messaging case, the structure of the market, again, the, what the Supreme Court described in Twombly as the parties agreeing would be a plus factor, or at least an allegation that would render the antitrust claim plausible. That is, after 10 years, again, according to PHI, of stable pricing, they had a 30 percent price increase. They all did. Yeah, but the fact that they had it, that the first one did it, and there's a distinction. The first one did it, okay, we don't know why. The fact that others followed, though, is not necessarily because of an agreement where you have this kind of market, is it? Well, not necessarily, although we believe, given the market structure and, again, this unprecedented price increase, that this case, if it were purely being judged under Twombly, and here we are under Rule 56, so the Rule 56 standards apply, we believe stated a plausible antitrust conspiracy, and the Seventh Circuit in text messaging looked at exactly these types of factors and concluded that the district judge was correct in not dismissing an amended complaint. So, although interdependence is a factor that needs to be looked at, I think that the allegations in the original complaint would have gotten assessed. Clearly, text messaging is, takes a different, parts ways from flat glass and from Eric Gershberg's. Well, flat glass was a summary judgment case, and again, I think it illustrates some of the types of discovery that we'd be able to get. But there was also a very complex structure in text messaging and a rapid increase, I mean, the facts are different in terms of what happened there. Well, the facts are different, Your Honor, but the underlying economic principles, I think, are the same and can be applied to different factual circumstances, such as a re-operator market in the Gulf of Mexico for interchangeable helicopter services. What we believe the district court should have done is granted our 56D motion and allowed us to pursue full discovery here before dismissing the complaint. Why didn't you narrow your discovery request somewhat before the February 10th deadline? To make it more in line with what you really needed to show. Well, we believe that the discovery requests were appropriate, although I know there's a suggestion by the defendants that they had encouraged us to do so. I don't remember that. We thought the discovery requests were appropriate. We were operating from a position where we didn't really have anything that we thought we could narrow it any more than we already had at that time. Again, I think, you know, we don't have to ask for particular documents or, for example, did you budget for price increases, is that something that you did? How, is there an internal memoranda about how you reacted when the first one raised its prices? Things like that. We didn't think it was necessary under the discovery scheme under the federal rules to ask for, for example, particular documents. Thank you, Your Honor. Good morning, Your Honor. My name is Helene Jaffe, and I'm appearing on behalf of all the appellants, appellees, excuse me, all the defendants in this action, and I'm requesting that this court affirm the district court's order granting summary judgment in defendant's favor and dismissing the plaintiff's complaint. Now, what I'd like to explain in our briefs, why the district court's opinion should be affirmed, so I want to focus today on the questions that the panel has been asking my opposing counsel, because bottom line, the plaintiff's entire argument to reverse the district court's order is based on the following. If the amended complaint that they filed is sufficient under Trombley, then they get full discovery. As a typical defendant, I would call that blunderbuss discovery, but full discovery are the words they use. And because they didn't get full discovery, the grant of summary judgment was inappropriate because it was premature. They didn't have enough discovery in order to rebut the showing that the defendants made. What if we think that the amended complaint, I mean the original complaint, is pretty strong in terms of what it averves with respect to the class period, what happened here, the statements by Mr. Wagstaff, the President of Bristow's statements, kind of where there's smoke there's fire here. Why shouldn't we not say that this is enough to get you to the point where you can have some discovery? Well, Your Honor, number one, that's exactly what the district court judge did in granting the right to the plaintiffs to file the amended complaint, and in fact the district court granted the plaintiffs discovery. Only with respect to the very new stuff. Well, that's because, Your Honor, that's exactly going back to what did the plaintiffs have to show and what has the Supreme Court and this Court said in the context of a conscious parallelism antitrust case. What does the plaintiff have to show to get you past the interdependent conduct? And the key, you have to show contract combination and conspiracy. You got to show that concerted activity under Section 1. And indeed, what the judge did in the district court and what he said, and I'm quoting from his opinion, under Trombley and the Third Circuit President in a highly concentrated interdependent oligopolistic market such as that alleged here, quote, evidence implying a traditional conspiracy becomes critical. And that's your insurance brokerage case. That's right. And that's the fact. Hold on, hold on, hold on. Sure. But B of their affidavit asks for information relating to encounters and day timers and telephone records, talking about communications between all of the individual defendants. I mean, isn't that fair? Your Honor. Couldn't that be indicative of some agreement? It could be, but there was never, when we look at what's happened in this case, they came in with an original complaint that the district court said didn't get them to the plausibility line under Trombley. All they had was interdependent conduct, economic data. They had articles. They had publicly available information. They come back with three paragraphs stating out that they have evidence or they allege they have evidence based on this confidential witness of an actual price fixing conversation, albeit only one side of it. So the judge, in determining to let them file the amended complaint, still, you know, never uses the word plausible, but in any event, says, you know, I may be skeptical, but the Supreme Court said, even if you're skeptical, that's not enough, Judge. If it's plausible, you got to give him a shot. And that's what he does. Nowhere in Trombley does the Supreme Court say, well, if you pass 12B6, you get full discovery. Indeed, in Trombley, the court reaffirms that the district court, even when they grant the motion, they deny the motion to dismiss, the Supreme Court doesn't obliterate Rule 16 and say that the district court, now it's a digital thing. You either pass Trombley, you get full discovery. They say, no, district court, indeed, you should exercise your inherent powers to control the discovery process. And that's exactly what this district court did. He said, the one thing in your complaint that gets you past possibility to approach plausibility is you're talking about that, that plus factor that this Third Circuit, that his court talks about, quote, non-economic evidence that there was an actual manifest agreement not to compete, which may include proof that the defendants got together and exchanged assurances of common action or otherwise adopted a common plan, even though no meetings, conversation, or exchange documents are shown. And that's exactly what he does. He says, you've got these, you've identified certain people in these paragraphs, you've identified all of this. Go out and take those depositions and see what happens. If you want more discovery, let me know. And sure enough, the plaintiffs submit a letter pursuant to the order, which I dare say, if you look at that letter, it was more circumscribed than the nine items listed in their 54 d statements. Had the plaintiff submitted the proposed amendment before the court issued the court order allowing the amended complaint? There was a very, it was like a day time period between the order and the filing of the amended complaint. Yes, Your Honor. And that was because I think procedurally, when they moved and with their flurry of motions, they attached the amended, their proposal. They attached it. They attached the amended complaint. Right. So the court knew that the additional material was going to be the total allegations about the Graves phone call. Absolutely. And in fact, when you look at the motion that was filed by the plaintiffs, they explained to the court that the only difference between the original complaint and the one they filed was the, quote, these three paragraphs, which was the newly found evidence they had, which evidenced, they believed, a price-fixing communication, again, trying to get to that plus factor that there was something there. And the judge, they authorized depositions and, in fact, authorized four depositions only. You're saying, essentially, that we need to take the context in which that order was entered on discovery into account when we determine whether or not the court abused its discretion. Absolutely right. And then when you look, Your Honor, at what the discovery record revealed, all that we have seen when we go through the Tuttle deposition, what does his deposition show us? Tuttle testified he didn't know who the person was that Graves was talking to. He didn't hear or know what the other person was saying to Graves. He didn't recall any words or phrases from the conversation. And even though he told Plaintiff's Counsel that he thought or believed that it was Jim Shukert on the other end of the phone talking to Graves, he later, quote, realized that Shukert was no longer at a competitor. So that allegation, which was in the amended complaint and served as, again, a detail of fact, turned out to be not true. And again, even though Tuttle told Plaintiff's Counsel that he overheard Graves say that the company, his company's president, Jim Clement, had authorized a price-fixing agreement between the company and others, he, quote, was mistaken because Jim wasn't there as president of the company where Graves was at, and so that allegation The whole Tuttle escapade hurt more than helped, you're saying. Your Honor, they had an opportunity. Plus, they had more than that. They had an opportunity to depose Graves. And in the judge's opinion, when Grant's discovery, he specifically says, take these depositions and it may enable you to figure out, Plaintiff, who Graves was talking to. One would think that could be a question that was, could be asked. Who Tuttle was talking to. Who, I'm sorry, Graves, the defendant person, was talking to. Who was on the other end of the phone? Because they already knew the Plaintiff's Counsel that it wasn't the man identified. That question wasn't asked. They never, they never pursued that. They took two depositions and stood still. Even when they had more discovery time, and the court order clearly indicated that, in setting out the schedule, that at a certain point in time, defendants could move against the complaint after the discovery. The judge said you could come back to me after the four depositions. They knew what was happening, but they did nothing. They stood still. Put aside, as the court had inquired before, that they did nothing from the time they filed the original complaint, till the court ruled denying the, I'm sorry, granting our motion to dismiss. So, so you're saying that the discovery during that time period was not necessarily limited to Tuttle, they had the ability to proceed with more depositions. Absolutely. And discovery, but did not. They did not, Your Honor, because here, when you have the Tuttle depositions, so admitting, in case they didn't know before, but clearly on the record, he had no, he was wrong, and, and, and no longer does he know who Graves was talking to. And one of the specific lines in the judge's opinion in permitting the amended complaint to, to go forward and do not, and setting out the discovery. He says, in the four depositions, maybe the plaintiffs can figure out who Graves was talking to. Not bizarre, but, but they never did, and they did depose Graves. So again, there were opportunities, plus, as we made clear when we opposed the letter that the plaintiffs submitted to the judge before the depositions took place, outlining what kind of discovery they wanted, we said, let them take some depositions, they can always come back. You can go back, if you show something. We understand that, but they never did. They took the two depositions and stood still, waiting for us to make the motion. Not a surprise, the judge tells us when we are allowed to make the motion. We make the motion, not, you know, we like to think we're brilliant, but given the, the record here, we thought this was fairly obvious what was gonna happen. They suddenly come back and say, well, no, now we need discovery. And those nine points are very broad, but most importantly, perhaps, is that they never link any of that to what the critical issue is for the judge to defeat our summary judgment motion, that there's no evidence of a contract combination and conspiracy. They say instead, they need all of this stuff. They need to understand the marketplace. They understand the economics. But little, if any, and they, and they never take this position in response to your question, your honor, they never say, no, we just need this, cuz this may get us exactly to that plus factor that this court keeps telling the district courts, you gotta look at when you're looking at, at, at parallel conduct. If you can't show a section, you can't show contract combination conspiracy, you know, it's axiomatic after Copperwell, you can't, you can't show a section one violation, and there's no evidence in the record. The fact, notwithstanding the characterizations by clever opposing counsel, Tuttle just has feelings about what went on. Now, feelings are, are appropriate and right in a lot of places, but when you're trying to beat summary judgment, you need fact. Both feelings and facts start with an F, but they're not the same, and that's all they had here, was a bunch of feelings, and they never pursued any of these hints are the wrong word, any of these other paths. Let me just follow up where you are now. You are at summary judgment, and wasn't the evidence as, it was then before the court, which included the depositions, and the allegations in the complaint, both complaints, original and amended. But the amended complaint, the amended complaint, is the same as the original. Isn't the evidence, wasn't the evidence as taken as a whole, sufficient to survive summary judgment? No, it wasn't, Your Honor, because the issue before the court on which we moved to summary judgment was that there was no evidence of the, an essential element of a section one case that they pled, concerted activity. I mean, I can, I can see almost have an easier task at 12B6 stage on this conscious parallelism question than you may have at the summary judgment stage. Well, at the summary judgment stage, Your Honor, unlike at the 12B6 stage, where they can rely on well-pled allegations, at summary judgment, you need proof. You need facts, and they had none to establish that there was any conspiracy among any or all three defendants in this case. They had nothing. But, but I guess that takes you back to the, their argument B or argument A, whichever, we didn't have the facts because the court wouldn't allow us to. But that's not the case, Your Honor. They had discovery. They had the opportunity on that essential fact. On was there a price-fixing conspiracy. They were allowed. And the judge didn't limit it. Well, he allowed them to take. To, to depositions. No. He, in his order, he specifically laid out four depositions and, and stated in doing that, that if they can't figure, if, if they don't know who Graves was talking to during this process, maybe they could find out.  Correct. But you, you do have the economic questions. You do, Your Honor, but the court. And those were, those were pled. Those were pled, and for the purpose of summary judgment, we've assumed them to be true. But what this court has said, as has the Supreme Court, those economic pleadings, they're snippets from, you know, an article where nobody knew who said what, whatever. Just doesn't get you to be able to conclude or infer the critical element of concerted activity. And that's what the, the problem in this case is. Because it's oligopolistic. Correct. And that's why this court says you need to show evidence of this plus factor. How can we tell if it was interdependent and no conspiracy, which is not illegal under section one, or the result of some conspiracy among the defendants? You don't know. And you can't infer from the fact that there was, quote, unprecedented price increases, that one guy moves, and then some other two guys move. You can't infer a conspiracy from that, because interdependent conduct, unilaterally done, could show the same thing in the world. The only way you can figure out if that product, that conduct you're seeing, violates the antitrust laws, is if you have some facts from which a court feels comfortable to infer that there was a conspiracy here, and there was none. Although the plaintiffs had the opportunity to get discovery, they had discovery, they didn't even complete that discovery. They could have, you know, gone back if they thought that these depositions showed something. They never went back. They didn't finish the four. They sat back and, and to defeat summary judgment, came up with an even longer, broader list of what they needed. All going back, again, to their theme, once they had passed Trombley, they need full discovery before summary judgment can be granted. Did you, and I assume that you didn't, because this was all done at one time. Did you file a motion to dismiss after the filing of the amended complaint? We filed opposition to the filing of the amended complaint. I understand that. You filed opposition. Right, and we did not, when the judge granted the motion, just let me state it, because I think this is responsive to your question. When the judge granted the motion to amend, we did not move to dismiss that. We went, as the judge told us. But, but yeah, because the judge said, okay, we're going to, you're going to have four depositions, you're going to have two months. Right, and whether we thought it was plausible or not, whether, whether the judge was correct at the Trombley, we didn't bother. Right. We went, we went, we went, and we went right to discovery. Okay. All right, thank you. Rebuttal. Your Honors, I'll defend not only Mr. Tuttle's honor, but ours. Far from the description, and you've had an opportunity to read the transcripts, but far from feelings, Mr. Graves said, for example, that he, or pardon me, Mr. Tuttle heard Mr. Graves talking to who he said, that is, Mr. Tuttle testified that he knew at the time was someone from PHI. Although he couldn't remember who it was. Mr. Schubert had been a PHI. Again, not to, to dwell on any mistakes he might have made in, in recollection, but Mr. Tuttle came forward, he testified as to his recollection of a conversation that he heard between his superior, who was responsible for selling the helicopter services and pricing in the Gulf of Mexico, with someone he knew was a competitor. How did he know the person was from PHI? Well, he didn't say, and they didn't ask him, he didn't say how he knew. In his deposition. Well, I can understand them not asking. He might have said, but I, but there is no basis for, for his knowledge that it was from PHI. Well, again, it was a long time ago, well, ten years ago, about. And he had been in this business for years, and he had heard Mr. Graves talking to people at PHI many times in the past. He said, well, Mr. Graves had been at PHI for, I forget what, 16 years. He knew everybody there. Again, this was a close-knit industry. Mr. Graves, we had no documents. Mr. Graves, we took his deposition. He said, I never spoke to anybody at a competitor during that time period about price increases. My co-counsel asked him, well, what about some other? No, we, well, you can't ask him that because you're strictly limited to the allegations and those, the, the three new allegations you're a man to complain. So the defendant said, you can't ask him anything outside the six, first six months of 2001. And in fact, the judge's order from, this is JA 157, after the back and forth between plaintiffs and defendants about additional discovery, item two, the scope of all permitted depositions shall be strictly limited to the allegations set forth in plaintiff's amended complaint, paragraphs 30 to 32, three, document discovery at this time is not warranted. And Judge Fischer, I think you hit the nail on the head here. It was the summary judgment standard. And looking at all the evidence holistically and collectively, we believe that if we were at that stage, which we don't believe we should have been, that all the reasonable inferences that could be drawn from the evidence in the record would defeat summary judgment, not allow for its being granted. Why couldn't you have asked for discovery? I mean, you're, you, you heard the other side complain that you could have sought discovery, but did not. Now, granted, you know, when that order came out, it does seem limiting, but what about before that? Well, again, document requests or interrogatories or? We did not, Your Honor. And again, how these cases work, they filed a motion to dismiss almost immediately. The next case, I will, Your Honor, but this case I did not. Send discovery. Oh, they didn't file it for the amended, yeah. Because after the second amended complaint, the judge had set forth a procedure how we were supposed to go forward to seek additional discovery, and we followed the procedure that the judge had set up. Again, this was a situation where we think that initially the judge should have allowed us full discovery. All of the principal antitrust summary judgment cases in the Third Circuit, there was full discovery. Maschieschito, Rossi, Alvord, Polk, Petruzzi's, Flat Glass. I mean, we were at summary judgment here. Flat Glass doesn't help you. Well, there was full discovery, Your Honor. You could have had full discovery of the specific issues that would have gotten you there. That was more targeted, couldn't you? I don't think we could have after the amended complaint was filed because we had gone through the procedure that the district court had set up and we had been denied a request for documents. And we had been denied any other discovery other than related to four individuals mentioned by Mr. Tuttle during a circumscribed period of time, first six months of 2001. There aren't any other questions. Thank you, Your Honor. Thank you. Case is well argued. We'll take it under advisory.